**United States District Court**
**District of Massachusetts**

| | | |
|---|---|---|
| **MARTHA'S VINEYARD SCUBA HEADQUARTERS, INC.** | ) | |
| **v.** | ) | **Civil Case No. 12-10715** |
| **EDWARD J. MCCLUSKIE TIMOTHY LAURENCE.** | ) | |

**MEMORANDUM AND ORDER**

**GORTON, J.**

This case arises out of an alleged tortious interference with a contract. Plaintiff Martha's Vineyard Scuba Headquarters ("plaintiff" or "MV Scuba"), alleges that defendants Edward J. McCluskie ("McCluskie") and Timothy Laurence ("Laurence") have withheld documents that they were required to turn over to plaintiff pursuant to an exclusive contract with McCluskie's former employer Harland & Wolff Technical Services Limited ("Harland & Wolf").

## I. Background

Plaintiff is a Delaware Corporation with offices in New York. Defendant McCluskie is a resident of Northern Ireland. Harland and Wolf is a United Kingdom Corporation with offices in Belfast, Northern Ireland. Defendant Laurence is a citizen of Canada and resides in Nova Scotia.

McCluskie is alleged to be in possession of the General Arrangement Deck Plans of the RMS Republic (formerly the RMS Columbus), a ship built by Harland & Wolf that foundered off the coast of Nantucket following a collision with the SS Florida in 1909. MV Scuba has the exclusive salvage rights to the vessel. In May 2012, in a related case, this Court ordered McCluskie to produce the subject documents to plaintiff. In June, after considering an affidavit from McCluskie indicating that he had no knowledge of the location of the General Arrangement Deck Plans, the Court revoked that order and declined to hold McCluskie in contempt of court for failing to comply with the original order. Martha's Vineyard Scuba Headquarters, Inc. v. The Wrecked & Aban, 280 F.R.D. 76 (D. Mass. 2011)(Doc. Nos. 140 and 151).

Plaintiff also alleges that Laurence entered into an agreement with plaintiff to produce a television documentary about the RMS Republic. Laurence is further alleged to have known of the importance of the General Arrangement Deck Plans to the plaintiff, and represented to plaintiff that those plans were in the possession of a colleague of his, later identified as McCluskie.

## II. Procedural History

On April 23, 2012, Plaintiff filed its Complaint. On September 5, 2012, McCluskie filed the pending motion to dismiss (Doc. No. 6) and subsequently a reply to plaintiff's opposition

to that motion. Laurence has not filed an Answer to plaintiff's Complaint and a default judgment was entered against Laurence on November 30, 2012.

## III. Analysis

### A. Legal Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is 1) statutorily authorized and 2) consistent with the Due Process Clause of the United States Constitution. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009). When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must apply the "prima facie" standard of review. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under that standard,

> it is plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution.

Id. (quoting United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 43 (1st Cir. 1993)). The plaintiff must proffer evidence of the specific facts upon which he relies to establish personal jurisdiction. Id. at 619. To meet that requirement, the plaintiff must "go beyond the pleadings and make affirmative proof." Id. (quoting 163 Pleasant St. Corp., 987 F.2d at 44). "[P]laintiffs may not rely on

unsupported allegations in their pleadings to make a prima facie showing of personal jurisdiction." Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992).

Because the Massachusetts long-arm statute reaches to the full extent that the Constitution allows, the Court may proceed directly to the Constitutional analysis. See Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995); Tatro v. Manor Care, Inc., 625 N.E.2d 549, 553 (Mass. 1994). Due Process requires that the defendants have "minimum contacts" with the forum state such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

As a threshold matter there are two forms of personal jurisdiction: general and specific. Pritzker v. Yari, 42 F.3d 53,59 (1st Cir. 1994). General jurisdiction exists when the defendant has engaged in "continuous and systematic activity," unrelated to the suit, in the forum state. Id. at 60. Specific jurisdiction is narrower and exists when the plaintiff's cause of action arises out of or relates to the defendant's contacts with the forum state. Id.

**B. Application**

McCluskie has moved to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ P. 12(b)(2). He states he is

a resident of the United Kingdom who conducts no business in the United States and as a result asserts that he should not be subject to this Court's jurisdiction.

**1. General Jurisdiction**

For general jurisdiction to exist, the defendant must engage in a "continuous and systematic" pursuit of general business activities in the forum state, such as marketing or shipping products, performing services or maintaining one or more offices. Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 32 (1st Cir. 2010). The Court considers "all of a defendant's contacts with the forum state prior to the filing of the lawsuit." Id. at 29 (citations omitted).

In this case, plaintiff offers several facts that it believes, together, constitute the kind of "continuous and systematic" contact that would subject McCluskie to this Court's general personal jurisdiction. Specifically, plaintiff points to: 1) McCluskie's membership in the Titanic Historical Society ("THS"), a Massachusetts Corporation, 2) McCluskie's speech at a THS event in Massachusetts, 3) McCluskie's posting on the THS internet message board, 4) the sale of McCluskie's latest published book on the THS website and 5) the fact that the THS sells prints of deck plans obtained from McCluskie's former employer Harland & Wolff. Plaintiff also argues that McCluskie's book sales on Amazon.com as well as his consulting work with

various American media outlets, including his work on the 20th Century Fox motion picture Titanic, subjects McCluskie to jurisdiction in Massachusetts.

Although plaintiff proffers evidence of certain contacts had by McCluskie with the Commonwealth, those contacts, do not rise to the level of "continuous and systematic activity". Indeed, much of plaintiff's argument in favor of having this Court exercise its general personal jurisdiction focuses on activity precipitated outside of the forum on a website that was not specifically directed at the forum. See Cossaboon , 600 F.3d at 35 (finding that the existence of a website that offered products for sale in all states, without more, was insufficient to justify exercising general personal jurisdiction). In fact, McCluskie has traveled to Massachusetts on only two occasions, once to serve as a key note speaker at a THS event and once to be interviewed for an unrelated documentary. Based on such tenuous connections, McCluskie's activity within the forum falls far short of "systematic and continuous." See Helicopteros Nacionales de Colombia S.A v. Hall, 466 U.S. 408, 410 (1984) (Finding no grounds for general personal jurisdiction where a foreign company had transacted some business in the forum and sent personnel to the forum for training).

**2. Specific Jurisdiction**

The First Circuit employs a tripartite analysis to determine

whether specific jurisdiction is appropriate. The Court inquires whether 1) the claims arise out of or are related to the defendants' in-state activities, 2) the defendants have purposefully availed themselves of the laws of the forum state and 3) the exercise of jurisdiction is reasonable under the circumstances. See, e.g., Platten v. HG Bermuda Exempted, Ltd. 437 F.3d 118, 135 (1st Cir. 2006); Sawtelle, 70 F.3d at 1389.

**A. Relatedness**

Although the Court is unconvinced that McCluskie's alleged withholding of documents amounts to tortious interference with the agreement between plaintiff and Harland & Wolf, for the purpose of this analysis, it treats those allegations as true. Adelson v. Hanlan, 510 F.3d 43 (1st Cir. 2007)(the Court must take all properly documented evidentiary proffers as true).

Generally, when plaintiff's claims sound in tort, in order to determine relatedness, a court "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir. 1999). In contract cases, the court

> must look to the elements of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach.

Id. When "the tort is intentional interference with a contractual or business relationship" the tort and contract inquiries "begin

to resemble each other." Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 10 (1st Cir. 2002).

McCluskie has had no contact with Massachusetts related to this claim. Indeed, plaintiff has not alleged that any of McCluskie's purported contacts with the Commonwealth share any causal nexus with the alleged injury. Instead, the only possible connection between McCluskie's alleged interference and the forum state is that the injury may have some residual effects in Massachusetts.

The "effects test" is generally not applicable when assessing relatedness. See Mass Sch of Law v. ABA, 142 F.3d 26, 36 (1st Cir. 1998) ("we have wrestled before with the issue of whether the in-forum effects of extra-forum activities suffice to constitute minimum contacts and have found in the negative."). With respect to contractual interference claims, however, the First Circuit has found relatedness based solely on the effects of extra-forum activity felt within the forum. Astro Med, 591 F.3d at 10. This case is, however, distinguishable from Astro-Med. The injury arising from the alleged interference with the contract between a New York company and a United Kingdom corporation will not occur in Massachusetts. At best, plaintiff might assert that the General Assignment Deck Plans it hopes to receive will help it salvage a vessel that is currently wrecked off the Massachusetts coast. But the actual injury, in this case

the inability to obtain the plans, will be felt in New York where MV Scuba is located. As a result, the effects in Massachusetts of the alleged interference are insufficient to meet the standard for relatedness.

**B. Purposeful Availment**

To prove purposeful availment the plaintiff must show that the defendant expressly aimed the act at the plaintiff, knowing it would be felt by the plaintiff in the forum state. Calder v. Jones, 465 U.S. 783, 788-89 (1984). Here, plaintiff has made no showing that defendant has purposefully availed himself of the laws of Massachusetts. Even if plaintiff proves that McCluskie knew (or should have known) about the agreement between plaintiff and Harland & Wolf, at best, McCluskie might have known that MV Scuba planned to use the General Assignment Deck Plans to salvage a vessel in Massachusetts. That knowledge, however, combined with the fact that the actual injury would be manifested in New York where MV Scuba is located, is insufficient to find that McCluskie has purposefully availed himself of the laws of Massachusetts.

**C. Fair Play and Substantial Justice ("Gestalt Factors").**

To evaluate whether the exercise of personal jurisdiction would be reasonable or would offend traditional notions of fair play and substantial justice, the Court considers the "Gestalt factors": 1) the burden on the defendant of appearing, 2) the

forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most effective resolution of the controversy and 5) the common interests of all sovereigns in promoting substantive social policies. Burger King Corp., 471 U.S. at 477.

Here, the burden on defendant of appearing is so great that even if plaintiff had satisfied the relatedness and purposeful availment prongs, the Court might still find the exercise of jurisdiction over McCluskie to be unreasonable. As evident from McCluskie's affidavit, it would be extremely difficult and costly for him to appear and defend suit in Massachusetts, particularly because McCluskie resides in the United Kingdom and is in poor health.

Furthermore, Massachusetts has a de minimis interest in adjudicating this matter because the alleged tortious act plainly occurred outside of this jurisdiction. Ticketmaster v. Alioto, 26 F.3d 201, 211 (1st Cir. 1994)("interest in litigation sub judice is arguably lessened by doubts surrounding whether defendant's acts can be said to have been committed in the forum."). Moreover, the effects of the injury will not even be felt in Massachusetts.

Finally, plaintiff's convenience, the administration of justice and fundamental substantive social policies do not

outweigh the overwhelming burden litigation would place on the defendant or the Court's scant interest in adjudicating this matter. As a result, the Court finds that subjecting McCluskie to jurisdiction in Massachusetts is unwarranted.

In accordance with the foregoing, the Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 6) is **ALLOWED** and the case is **DISMISSED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated January 24, 2013